RONNIE D. COOK, Plaintiff-Appellant, *v.* CATERPILLAR TRACTOR CO., Defendant-Appellee.

Third District   No. 79-468

Opinion filed June 25, 1980.

BARRY, J., dissenting.

Kenneth L. Ott and James R. Carter, both of Kenneth L. Ott & Associates, of Peoria, for appellant.

Homer W. Keller, Wayne L. Hanold, and Thomas G. Harvel, all of Westervelt, Johnson, Nicoll & Keller, and Jerome A. Kenney, all of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This case involves an appeal from an order of the circuit court of Peoria County dismissing the plaintiff's complaint with prejudice. Although there are a number of issues raised in this case, the ultimate issue is whether the dismissal of the plaintiff's complaint was proper.

The record reveals that on November 19, 1975, and again on December 19, 1975, the plaintiff, Ronnie D. Cook, injured his back while employed by the defendant Caterpillar Company. Subsequently, the plaintiff filed a workmen's compensation claim against Caterpillar. (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) The defendant paid plaintiff a total of $1,642.60 in temporary total compensation that accrued intermittently from November 19, 1975, until January 17, 1977.

On January 18, 1977, the plaintiff reported for work. However, due to continued pain and discomfort in his neck and back, he found he was unable to work, advised his foreman in this regard, and punched out after having been on his shift less than two hours. The next day the plaintiff's wife notified the defendant that the plaintiff would be absent from work. On January 20, 1977, the plaintiff's wife delivered a disability benefit form to Caterpillar. The form was signed by the plaintiff's doctor, and stated that the plaintiff's back condition would be aggravated by engaging in work which required lifting or bending. The plaintiff did not report to work on January 19, 20, 21 and 24. On January 24, 1977, the defendant discharged Cook. The specific reason given for the firing was plaintiff's violation of a company rule which provides that an employee may be

discharged "for being habitually tardy or absent, or being absent from work for more than three days without proper notification and approval." The company's action was based upon plaintiff's absences on January 19, 20, 21 and 24. Proceeding according to the grievance procedure contained in article 5 of the collective bargaining agreement between Caterpillar and the plaintiff's union, the plaintiff filed a grievance with the defendant. This grievance did not contain any allegation that the plaintiff had been discharged in retaliation for having filed a workmen's compensation claim. The grievance was subsequently submitted to arbitration, pursuant to article 6 of the collective bargaining agreement.

On March 2, 1977, an arbitrator of the Illinois Industrial Commission rendered a decision in which he found that the plaintiff was entitled to receive from Caterpillar $164.27 per week for an intermittent period of 16 1/7 weeks pursuant to section 19(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(b)). On review, this award was increased to temporary total compensation of 21 6/7 weeks. This decision was not appealed.

On April 30, 1977, the labor arbitrator rendered his decision regarding the plaintiff's grievance. Limiting his decision to the narrow issue of whether the plaintiff's discharge had been for "just cause," the arbitrator found that Cook had in fact provided just cause for his dismissal when he was absent from work without leave on January 19, 20, 21 and 24, and dismissed the grievance.

On January 18, 1979, the plaintiff filed the instant action against Caterpillar, alleging that Caterpillar engaged in a retaliatory discharge of the plaintiff when the plaintiff was discharged for pursuing his right to receive compensation under the Workmen's Compensation Act. In his two-count complaint, the plaintiff sought $250,000 in compensatory damages, and $1,000,000 in punitive damages. A motion was subsequently filed by Caterpillar to dismiss the plaintiff's complaint. In its motion Caterpillar contended that by resorting to and exhausting his out-of-court remedies, plaintiff was not entitled to seek redress in the courts or, alternatively, the decision reached under the out-of-court procedures was res judicata respecting any subsequent legal action. The court granted defendant's motion and plaintiff appeals.

The first issue raised by plaintiff is whether the fact that plaintiff exhausted his remedies pursuant to the provisions of the collective bargaining agreement bars access to the court or whether it is a condition precedent to the filing of a civil suit for retaliatory discharge. Plaintiff contends he must exhaust his administrative remedies prior to bringing suit. Having failed to gain satisfaction by this method, he contends that he may subsequently file a suit for retaliatory discharge sounding in tort. This argument rests on two premises. The first premise is that the issue of

retaliatory discharge could not have been resolved by arbitration. The second is that the action lies in tort and not in contract.

At the heart of the premise that the issue could not have been resolved by arbitration is the assumption that the collective bargaining agreement does not provide a means of redress for retaliatory discharge. That assumption is erroneous. Section 5.1 of the collective bargaining agreement provides for the grievance procedure and defines grievances. Part b of section 5.1 states that a grievance is "[a]ny matter involving the interpretation, application or violation of any provisions of this agreement * * *." One of those provisions is section 5.5 which states, "Employees shall be * * * discharged only for just cause." The provision further discusses the procedures to be followed when there has been a discharge. It is thus clear that whether or not an employee has been discharged for just cause is covered by the collective bargaining agreement.

If the employee was not discharged for just cause, then he was wrongfully discharged. It is obvious that an investigation into whether or not there was a wrongful discharge would examine the possibility that the employee was the victim of a retaliatory discharge. Therefore, the arbitrator clearly has the power to decide the matter if one side should bring it up.

■■ It is true that the agreement does not specifically enumerate retaliatory discharge as a grievance. However, not every conceivable problem can be covered by a collective bargaining agreement. Such an agreement is an effort to erect a system of industrial self-government. (*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347.) Because of the breadth of matters covered by such an agreement, as well as the need for a fairly concise and readable instrument, the agreement cannot specifically enumerate a provision to cover every situation. Therefore, the provisions regarding the employer's right to discharge for just cause and the employee's right to continuance of his employment in the absence of such just cause are couched in general and ambiguous terms. (*Payne v. Pullman Co.* (1957), 13 Ill. App. 2d 105, 141 N.E.2d 83.) These terms "are given practical implementation by the establishment of a complete system of arbitrament * * *." (*Payne*, 13 Ill. App. 2d 105, 118, 141 N.E.2d 83, 89.) In view of the above, it is clear that simply because retaliatory discharge is not specifically mentioned in the collective bargaining agreement, it is not beyond the scope of the agreement. In fact, the discharge provisions of the agreement were intentionally left in general terms so as to allow enough flexibility to permit various considerations such as retaliatory discharge to be weighed when an arbitrator tries to determine whether or not there was just cause for a discharge. It is an inescapable conclusion that the concept of retaliatory discharge is

subsumed within the just-cause provision and is within the power of the arbitrator to consider when determining if a discharge is for just cause.

The second premise relied on by plaintiff is that an action for retaliatory discharge sounds in tort, not contract. In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the Illinois Supreme Court stated that where there has been a retaliatory discharge of an employee terminable at will, the discharged employee may bring an action in tort. The reasoning behind the court's decision is that an employee terminable at will has no recourse against his employer if the employer decides to discharge the employee for filing a workmen's compensation claim. In the absence of the ability to recover in tort, an employee terminable at will would be forced to choose between continued employment and the workmen's compensation legally due him. This would have seriously undermined the Workmen's Compensation Act, and so the court permitted employees terminable at will to sue in tort for retaliatory discharge.

■■ The issue in this case is whether *Kelsay* is applicable to a situation where an employee is not terminable at will, but instead has recourse against an employer under a collective bargaining agreement permitting discharge only for just cause and allowing for arbitration to guarantee the parties' rights. We believe that it is not. The policy considerations in *Kelsay* are not present here. In the instant case the employee is protected. As shown above, the discharge provisions of the collective bargaining agreement serve to protect the employee from retaliatory discharge. Thus, the employee is free to apply for workmen's compensation without worrying that he will have to sacrifice his job to gain those benefits.

In addition, there is another compelling reason not to extend the tort of retaliatory discharge. To permit an employee to circumvent procedures mutually agreed upon for handling grievances by filing suit in the first instance would undermine the collective bargaining agreement. Grievance procedures, including arbitration, were set up to prevent industrial strife. (See *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347.) To permit these procedures to be circumvented in a situation where the employee is protected by the procedures is to invite strife unnecessarily. The employee has a remedy in contract, and to expand the tort of retaliatory discharge to include the instant situation is not only unnecessary, but counterproductive as well. Therefore, we believe the employee must exhaust all the remedies available to him before filing suit which, of course, sounds in contract. See *Payne v. Pullman.*

■■ In the instant case, plaintiff has failed to raise the issue of retaliatory discharge as an issue in the grievance procedure. Therefore, he has failed to exhaust his remedies with regard to this issue. This failure precludes his

filing suit for retaliatory discharge. For this reason we need not consider the other issues raised by plaintiff.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, dissenting:

In affirming the circuit court's dismissal of the plaintiff's complaint, the majority holds that the plaintiff Cook has failed to exhaust all out-of-court remedies available to him and is consequently precluded from maintaining a cause of action in tort against Caterpillar. I strongly disagree with both the analysis and the conclusion of the majority, and for this reason respectfully dissent.

Exhaustion of out-of-court remedies by a discharged employee is not a necessary condition precedent to the filing of a cause of action in tort against an employer for retaliatory discharge. Exhaustion of the remedies provided in a collective-bargaining agreement *is* a logical and sensible prerequisite to the maintenance of a cause of action when that cause is based upon a violation of the terms of the agreement itself. Therefore, "[i]t is generally held that an action for wrongful discharge may not be maintained where the right of action is derived from a collective bargaining agreement, unless the plaintiff has first exhausted the grievance procedures established by such agreement." (Annot., 72 A.L.R.2d 1439, 1441 (1960).) However, in his complaint the plaintiff is not alleging that the discharge was *wrongful* in the sense that the terms of the collective bargaining agreement were violated. (Compare *Anson v. Hiram Walker & Sons* (7th Cir. 1955), 222 F.2d 100; *Payne v. Pullman Co.* (1957), 13 Ill. App. 2d 105, 141 N.E.2d 83.) Rather, the plaintiff is seeking damages for his *retaliatory* discharge based upon his pursuing a workmen's compensation claim. The plaintiff's cause of action sounds not in contract, but in tort. It is based not upon violation of the terms of the collective bargaining agreement, but upon a violation of the public policy of the State of Illinois to compensate employees for work-related injury. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) The plaintiff's cause of action exists independent of the collective bargaining agreement. The right of the plaintiff to maintain a cause of action in tort for retaliatory discharge should not, therefore, be dependent upon the exhaustion of remedies provided in a collective bargaining agreement which is not at the core of the controversy.

In addition, contrary to the conclusion of the majority, a grievance procedure such as the one provided in the collective bargaining

agreement in the case at bar by its very terms does not supply means of redress for an employee subjected to a *Kelsay* type of retaliatory discharge. Article 5.1 of the collective bargaining agreement provided as follows:

"Grievance Procedure

(5.1) A grievance is defined to be any difference which may arise between the parties, or between the Company and an employee covered by this Agreement as to:

a. Any matter relating to wages (except general wage adjustments) and including but not limited to merit increases, incorrect classification within a given occupation, or incorrect classification as to occupation, hours of work or working conditions, not covered by this Agreement; and

b. Any matter involving the interpretation, application or violation of any provisions of this Agreement, appended letters of agreement or appropriate local agreement."

The plaintiff's cause of action is not, by definition, a grievance under the collective bargaining agreement. It does not involve wages, nor does it even broadly speaking involve the "interpretation, application, or violation of any provisions of [the collective bargaining] Agreement, * * *." What it does involve is an examination into the employer's motivation for the discharge of an employee. To compel an employee to exhaust all of the grievance procedures provided by a collective bargaining agreement when those procedures cannot possibly afford him a remedy is to subject the employee to engage in a truly futile act. The only forum in which the employee's claim that he was the subject of a retaliatory discharge violative of public policy can be heard is a court of law. A discharged employee alleging retaliatory discharge need not exhaust out-of-court grievance procedures provided by a contract or collective bargaining agreement, which he must do to maintain an action for wrongful discharge based upon a contract theory, in order to maintain a cause of action against the employer in tort.

Even if I were to agree with the majority that exhaustion of all out-of-court remedies was a condition precedent to the maintenance of a cause of action for retaliatory discharge, I would be constrained to reverse the order of the circuit court dismissing the plaintiff's complaint because all available out-of-court remedies were in fact exhausted by the plaintiff. The majority finds that the plaintiff has failed to exhaust all of his nonlegal remedies because he failed to raise the issue of retaliatory discharge during the grievance procedure. In reaching such a conclusion, my colleagues assume that the question of retaliatory discharge could have been presented before the labor arbitrator. Such an assumption is manifestly erroneous.

First, as I have previously pointed out, the grievance procedure provided by the collective bargaining agreement did not present a proper forum in which to present an allegation of retaliatory discharge. Under the very terms of the agreement, an allegation by Cook of retaliatory discharge could not have been heard (as it did not fall within the definition of "grievance" provided in article 5.1), and even if Cook had made such an allegation, it would have been irrelevant to the determination of the narrow issue before the labor arbitrator, *i.e.*, was there "just cause" for Cook's dismissal based upon his absences taken without proper notification? Secondly, and perhaps of more consequence, the plaintiff's grievance was submitted to arbitration *prior* to our supreme court's decision in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. I do not comprehend how this plaintiff is to be expected to include in his grievance as grounds for redress a tortious action by the company when that action had not then been recognized by the Illinois Supreme Court to be against public policy and unlawful. Many burdens have been placed upon plaintiffs in civil cases, but never before has a plaintiff been given the burden of predicting what the law should be. Access to the courts of this State should not be based upon the ability of a litigant to satisfy such an irrational requirement. The majority's decision deprives the plaintiff of his day in court and works a gross injustice.

In *Kelsay*, the Illinois Supreme Court provided a remedy in tort for all employees who are subjected to a retaliatory discharge. The retaliatory discharge in that case took the form of a firing in response to the filing of a workmen's compensation claim. The fact that such conduct is highly reprehensible and repugnant to the public policy of this State is reflected in the prospective availability of punitive damages to discharged plaintiffs. In the case at bar, the plaintiff alleges in his complaint that he was the victim of such a retaliatory discharge. Instead of providing an opportunity for the plaintiff to prove these allegations in open court, however, the majority today constructs a highly tenuous barrier to the circuit court by erroneously asserting that the plaintiff's claim sounds in contract and could have been dealt with in the grievance procedure provided in the collective bargaining agreement. Such a conclusion is fallacious. The result reached in this case and in *Palmateer v. International Harvester* (1980), 85 Ill. App. 3d 50, ___ N.E.2d ___, reflects a conservatism in matters of employer-employee relations which I find disturbing, and assures to employers that the tort of retaliatory discharge, although recognized by our supreme court, is virtually nonexistent in the Third District.