RICHARD V. BASAK, Plaintiff-Appellee, *v.* ASPLUNDH TREE EXPERT COMPANY, Defendant-Appellant.

Second District   No. 83—382

Opinion filed December 27, 1983.—Rehearing denied January 26, 1984.

John W. Bell, John A. Childers, and Thomas H. Fegan, all of Johnson, Cusak & Bell, Ltd., of Chicago, for appellant.

Stephen D. Tousey, of Early, Collison, Tousey & Regan, of Elgin, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Asplundh Tree Expert Company, brings this appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), urging the circuit court of McHenry County erred in denying its motion for summary judgment. This court allowed defendant's petition for leave to appeal, and after consideration of the issues certified for review, we affirm the trial court's denial of the motion for summary judgment.

On March 3, 1982, plaintiff, Richard V. Basak, filed suit against defendant seeking compensatory and punitive damages resulting from his alleged retaliatory discharge for the filing of a workers' compensation claim. Defendant answered plaintiff's complaint and filed a motion for summary judgment which alleged that plaintiff had failed to

exhaust the grievance procedure under a collective bargaining agreement entered into between defendant and plaintiff's collective bargaining representative. The trial court denied defendant's motion, but found that an interlocutory appeal was appropriate.

Plaintiff alleged in his complaint that he was injured in the course of his employment with the defendant, and that he received benefits under a workers' compensation claim. Approximately seven months later plaintiff was released by his doctor to return to work with defendant corporation. Plaintiff next alleged that he was refused employment in any capacity, and that his refusal was a discharge in retaliation for plaintiff having pursued his rights under the Workers' Compensation Act. Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*

There are two questions certified for review: the first is whether an employee who claims that his employer discharged him in retaliation for filing a workers' compensation claim must exhaust any remedies provided in the collective bargaining agreement entered into between the employer and the employee's collective bargaining representative before suing the employer in tort. The second assumes that the employee must exhaust such remedies. It asks whether an employee may claim that the existing contractual remedy was not available because his union membership which provided him with access to that remedy had lapsed during the period in which he was under disability. This court addressed the first issue in *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203, and held in accordance with *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, and *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669, that an employee may not sue an employer in tort for retaliatory discharge for filing a workers' compensation claim where he is protected by a collective bargaining agreement's grievance procedure and he fails to exhaust those remedies. This court rejected the holding in *Wyatt v. Jewell Cos.* (1982), 108 Ill. App. 3d 840, 439 N.E.2d 1053, and a dissent in *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, which would allow an employee to sue his employer in a tort action for retaliatory discharge because such an action constitutes a separate and distinct remedy from any contractual remedies existing in the collective bargaining agreement.

■ Thus, the first question certified for appeal has been answered by the holding set forth in *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203. Plaintiff must exhaust his remedies under the grievance procedure prior to filing a claim for retaliatory discharge. However, *Suddreth* did not address

the second question raised herein, and after setting forth the factual basis for this case we discuss that issue below.

The facts of this case show that plaintiff sustained an accidental injury on August 30, 1979, arising out of his employment with defendant. His complaint shows that he filed a workers' compensation claim on September 13, 1979, and, that on March 9, 1980, defendant refused to permit him to return to work when he attempted to do so. Defendant filed a motion for summary judgment on July 6, 1982, stating that since plaintiff failed to follow the grievance procedure set forth in the collective bargaining agreement to which plaintiff and defendant were bound, he is barred from pursuing an action in tort until he has exhausted his contractual remedy pursuant to that agreement.

The agreement sets forth a grievance procedure to be utilized "[s]hould any difference arise under this agreement between an Employee or a group of Employees and a representative of the Employer, involving the application or interpretation of any provision or provisions of this Agreement, ***." According to the agreement, if a grievance is not presented within one week following its occurrence, the grievance is deemed not to exist. The agreement also gives the employer control to discharge an employee for "proper cause." It makes union membership a condition of employment and allows the employer to deduct an employee's monthly union dues and remit them to the union when so authorized in writing by the employee.

Plaintiff filed a response on July 30, 1982, stating that defendant stopped paying plaintiff's union dues after October 1979, and that defendant notified the union that plaintiff had quit as of October 1979, thus terminating plaintiff's union membership and access to the grievance procedure. Plaintiff attached to his response portions of his union's constitution and rules which provide that no member is entitled to notice of arrearages in his dues but must take notice when payments are due; and that a member working under an agreement requiring monthly payment of dues, as in the instant cause, has a grace period of 21 days after the first of the month following an indebtedness before being dropped from membership and cannot become a member in good standing again except by joining as a new member. The business manager of the union, Fred Smith, swore an affidavit in which he stated that the union has the policy to terminate union membership when a member terminates employment and no longer pays dues and that any such member who renews employment with the same employer at a later date must comply with any provisions of the collective bargaining agreement regarding becoming a

new union member. According to the agreement, a new employee for defendant does not have access to the grievance procedure until he has served a 90-day probationary period.

Defendant filed a reply memorandum on January 17, 1983, in which it stated that plaintiff had the duty to pay his union dues once he discontinued receiving monthly paychecks because the agreement requires the employer only to deduct union dues from an employee's paycheck. Hence, if the employee no longer received a paycheck, no deduction could be made. Furthermore, defendant stated that according to the agreement, an employee cannot engage in activity for the purpose of defeating or evading the terms of the agreement.

The deposition of Fred Smith attempts to interpret and clarify the procedure and rights of an employee where that employee's employer discontinues payment of the employee's union dues. Smith stated that where an employee no longer receives a monthly paycheck, the employer normally does not pay the union dues, but rather the member would pay those dues. An employee who fails to pay these dues loses the right to use the collective bargaining agreement's grievance procedures, so that if an employer refuses to hire an employee who was not working while under disability, the union could not do anything to protect the employee. He also stated that when an employee is out of work and receiving workers' compensation, everyone assumes that he will get his job back and that normally, once an employee is reemployed, he will begin paying union dues again. Once dropped from the union membership rolls, the employee would have to rejoin the union, and once he begins work again, he could use the grievance procedure. An employee who contemplates being out of work may maintain his union status by being placed on "leave of absence" for a $5 charge without being required to pay monthly dues. Once he started paying dues again, and started to work, he could file a grievance.

The trial court denied defendant's summary judgment motion and defendant then moved for an interlocutory appeal and filed a petition for leave to appeal with this court.

As stated earlier, the first issue certified for appeal has been resolved in this court's decision in *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203. Since the agreement in the instant case, as did the agreements in *Suddreth, Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669, and *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, sets forth a grievance procedure whereby a discharged employee may contest whether his discharge was for "proper cause," that issue need not be discussed here. Rather, the relevant in-

quiry is whether those holdings bar an employee from maintaining a retaliatory discharge action where he is no longer a member of the union because he has failed to pay his union dues and thus has no access to the grievance procedure set forth in the collective bargaining agreement.

In *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, the court explained the policy consideration behind our supreme court's decision in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, which established the tort of retaliatory discharge in Illinois. The policy was intended to protect an employee terminable at will where he files a workers' compensation claim. *Cook* did not allow the extension of the doctrine to employees protected by a collective bargaining agreement that permitted discharge only for just cause. According to the majority of that court:

"To permit an employee to circumvent procedures mutually agreed upon for handling grievances by filing suit in the first instance would undermine the collective bargaining agreement. Grievance procedures, including arbitration, were set up to prevent industrial strife. [Citation.] To permit these procedures to be circumvented in a situation where the employee is protected by the procedures is to invite strife unnecessarily. The employee has a remedy in contract, and to expand the tort of retaliatory discharge to include the instant situation is not only unnecessary, but counterproductive as well." *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 406, 407 N.E.2d 95, 99.

Defendant argues that allowing an employee to voluntarily lose access to his contractual remedy would similarly circumvent and undermine the collective bargaining agreement. Defendant relies upon *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669, to argue that where an employee has been dropped from the union membership for nonpayment of dues that his nonunion status is the result of his own doing, he should be barred from bringing a tort action.

In *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669, the appellate court adopted the holding and rationale of *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95. The employee argued, however, that he had been dropped from the union rolls for nonpayment of his dues and thus was not protected by the collective bargaining agreement. The appellate court agreed with the trial court's findings that the collective bargaining agreement, by its own terms, included union as well as non-

union employees and precluded that employee from using his nonunion status as a means to avoid the grievance procedure set forth in that agreement. The appellate court noted that the employee's nonunion status was of his own doing and, although the employer no longer paid that employee's union dues, other arrangements for the payment of the dues were possible.

The facts in the instant case are distinguishable from those in *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669. The trial court in *Deatrick* found that the agreement by its terms included union as well as nonunion employees. In the instant case, the agreement clearly covers only union employees since all employees must maintain union status as a condition of employment. The employee's failure to maintain union status in *Deatrick* was not a controlling fact in that decision.

In the instant case, plaintiff's decision not to pay union dues while under disability appears to have been a reasonable decision. Maintaining union status while on disability would have given plaintiff no benefits other than to have access to the grievance procedure. Because his subsequent discharge would not have been foreseeable when he declined paying monthly union dues, it would be unfair to deny him the ability to maintain a tort action for retaliatory discharge where he is no longer protected by a collective bargaining agreement. Although he could have maintained access to the grievance procedure by obtaining leave of absence status for a slight charge, his error in not doing so should not deny him the right to challenge his discharge. The facts of this case do not indicate, directly or inferentially, that plaintiff declined to pay his union dues for the purpose of circumventing the collective bargaining agreement. If that had been the case, another result may be proper.

While a condition of plaintiff's employment was his maintenance of union membership, since he was no longer "employed" while on disability as indicated on the job separation form, he had no contractual obligation to continue his payment of union dues. Thus, although it may appear unfair to permit an employee to unilaterally alter his employment status from a contractual employee to an at-will employee, under the circumstances presented herein the employee's alteration of his union status could not have been intended as a means of avoiding his grievance procedure. At the time of defendant's discharge, he was not a member of the union. Therefore, to bar plaintiff's action would deny him any remedy.

Defendant's reliance on *O'Neill v. Public Law Board No. 550* (7th Cir. 1978), 581 F.2d 692, 694-95, cited in *Deatrick v. Funk Seeds In-*

246

*ternational* (1982), 109 Ill. App. 3d 998, 1003, 441 N.E.2d 669, in which the court of appeals found that a union's duty to represent its members in disputes extends to employees who have been dismissed is inapposite in the instant cause. In *O'Neill,* the employee was a union member when he was discharged, unlike plaintiff in the instant case. Thus, defendant's argument that plaintiff's nonunion status did not preclude plaintiff from using the grievance procedure is incorrect.

■ Although an employee protected by a collective bargaining agreement's grievance procedure cannot maintain an action for retaliatory discharge, where that employee does not have access to the grievance procedure by virtue of his failure to pay his union dues, and such decision to not pay union dues was reasonable and not motivated by a desire to circumvent the grievance procedure, that employee should be able to maintain an action in tort for retaliatory discharge.

For the reasons stated, the judgment of the circuit court of McHenry County denying defendant's motion for summary judgment is affirmed and this cause remanded for proceedings on plaintiff's complaint.

Affirmed and remanded.

SEIDENFELD, P.J., and NASH, J., concur.